**Opinion filed April 23, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00010-CV
_____

## LISA KARL, Appellant

## V.

## BRAZOS RIVER AUTHORITY, Appellee

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. C44624**

## O P I N I O N

Lisa Karl brought a premises liability action against the Brazos River Authority (Authority). The Authority is a conservation and reclamation district created by statute that is a "river authority, a governmental agency, a municipality, and a body politic and corporate." TEX. SPEC. DIST. CODE ANN. § 8502.001(a) (West Pamph. 2014). The Authority filed a plea to the jurisdiction based on the

ground that Karl's claims were barred by governmental immunity. The trial court entered an order granting the Authority's plea. Karl appeals the trial court's order. Because we conclude that the recreational use statute[1] applies to Karl's claims, we affirm the trial court's order.

*Background Facts*

The underlying facts in this appeal are largely uncontroverted. On July 2, 2011, Karl and her sister, Rebecca Henderson, took their five children to Possum Kingdom Lake to go swimming. Karl, Henderson, and the children were wearing swimsuits under their clothes. They had an ice chest full of drinks and snacks with them. Karl and Henderson intended to go swimming in an area called Sandy Beach. However, the group instead arrived at the North D&D Public Use Area, which was owned by the Authority. The North D&D had a swimming area and a beach area on Possum Kingdom Lake.

Karl entered the North D&D by driving her pickup through the entrance gate to the property. She drove to a gatekeeper booth on the North D&D premises. She stayed in her pickup and talked with an attendant who was working at the booth. Karl asked the attendant whether there was room at the North D&D for her and her group to swim. The attendant responded that there was room. Karl pulled her pickup closer to the booth and then parked there temporarily. She got out of the pickup and walked up a step onto a concrete slab where the booth was located. Henderson and the children waited in the vehicle. Karl paid the attendant for a day pass for her and her group to go swimming. Karl turned around to go back to her pickup. When she stepped off the slab and onto the step, she fell to the ground and broke her left ankle. Karl claimed that the step was loose and gave way when she stepped onto it.

---

[1]TEX. CIV. PRAC. & REM. CODE ANN. §§ 75.001–.007 (West 2011 & Supp. 2014).

2

On February 2, 2012, Karl filed a premises liability suit against the Authority. She alleged that the condition of the loose step constituted a "premises defect that posed an unreasonable risk of harm." She further alleged that she was an invitee of the Authority at the time of her injury, that the Authority breached the duty to use ordinary care by failing to reduce or eliminate the unreasonable risk of harm created by the step, and that she was injured as a result of the Authority's failure to use ordinary care.

The Authority filed a plea to the jurisdiction. The Authority asserted that, at the time of her injury, Karl was engaged in recreation as that term is defined in the recreational use statute. Therefore, the Authority argued that Karl's claims were barred by governmental immunity. The trial court held a hearing on the Authority's plea and subsequently entered an order granting the plea.

### Issues on Appeal

Karl challenges the trial court's order in two issues. In her first issue, Karl contends that the Texas Tort Claims Act[2] waives governmental immunity for her premises defect claims. In her second issue, Karl contends that she was not engaged in recreation at the time of her accident and that, therefore, the trial court erred in concluding that the recreational use statute applies to her claims.

### Standard of Review

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject-matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). If a governmental unit has immunity from a pending claim, the trial court lacks subject-matter jurisdiction as to that claim. *Rusk State Hosp. v. Black*, 392 S.W.3d

---

[2]TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (West 2011 & Supp. 2014).

88, 95 (Tex. 2012). Subject-matter jurisdiction is a question of law. *Miranda*, 133 S.W.3d at 226. Therefore, we apply a de novo standard of review to a trial court's ruling on a plea to the jurisdiction. *Id.*

When a plea to the jurisdiction challenges the plaintiff's pleadings, we look to the plaintiff's intent, construe the pleadings liberally in favor of the plaintiff, and accept the allegations in the plaintiff's pleadings as true to determine whether the plaintiff has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012). When, as here, the plea challenges jurisdictional facts, we consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227; *Blue*, 34 S.W.3d at 555. The standard of review applicable to a trial court's ruling on a plea to the jurisdiction "generally mirrors" the standard that applies to a traditional summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure. *Miranda*, 133 S.W.3d at 228. We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Id.*

If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea to the jurisdiction, and the fact issue must be resolved by the factfinder. *Id.* at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228.

*Analysis*

"Sovereign immunity protects the State from lawsuits for money damages." *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Governmental immunity provides this protection to political subdivisions of the State, such as the Authority, and it is derived from the State's sovereign immunity. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011); *see* CIV. PRAC.

4

& REM. § 101.001(3)(B).  The Texas Tort Claims Act (TTCA) provides a limited waiver of governmental immunity.  *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655–56 (Tex. 2008); *Miranda*, 133 S.W.3d at 224.  Specifically, Section 101.021 of the TTCA waives governmental immunity in three areas: (1) property damage, personal injury, and death caused by the use of publicly owned vehicles; (2) personal injury and death caused by a condition or use of tangible personal or real property; and (3) personal injury and death caused by premises defects.  CIV. PRAC. & REM. §§ 101.021, 101.022, 101.025; *Miranda*, 133 S.W.3d at 225.  In this case, Karl claims that her injury was caused by a premises defect—an allegedly loose step—on the Authority's property.  Thus, Karl's premises liability claim fits within the third area of waiver listed above.

The TTCA provides that "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises."  CIV. PRAC. & REM. § 101.022(a).  If the claimant pays to use the premises, the governmental unit owes the claimant the duty owed to an invitee. *City of Irving v. Seppy*, 301 S.W.3d 435, 441 (Tex. App.—Dallas 2009, no pet.).

However, with regard to premises defect claims, Section 101.058 of the TTCA modifies a governmental unit's waiver of immunity "by imposing the limitations of liability articulated in the recreational use statute."  *Miranda*, 133 S.W.3d at 225; *see* CIV. PRAC. & REM. § 101.058 ("To the extent that Chapter 75 limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under [the TTCA], Chapter 75 controls.").  The purpose of the recreational use statute is to encourage landowners to open their lands to the public for recreational purposes.  *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).  The statute limits the liability of the State and others who open their land for recreational purposes.  *Id.*  The statute provides, in relevant part, that

5

"if a person enters premises owned, operated, or maintained by a governmental unit and engages in *recreation* on those premises, the governmental unit does not owe to the person a greater degree of care than is owed to a *trespasser* on the premises." CIV. PRAC. & REM. § 75.002(f) (emphasis added).

The recreational use statute applies if a plaintiff is engaged in "recreation" on the governmental unit's "premises" at the time of the injury. *Id.*; *City of Bellmead v. Torres*, 89 S.W.3d 611, 613–14 (Tex. 2002). The statute sets forth a nonexclusive list of activities that constitute "recreation," including swimming. CIV. PRAC. & REM. § 75.001(3)(C). In determining whether a particular activity is "recreational" for purposes of the statute, the relevant inquiry is what the plaintiff was doing at the time she was injured. *Torres*, 89 S.W.3d at 614. The statute defines "premises" to include the land itself, and also "roads," "buildings," and "structures" attached to or located on the land. CIV. PRAC. & REM. § 75.001(2).

Karl contends that the recreational use statute does not apply to her claims because she never began the recreational activity of swimming. We disagree. Based on the definition of "premises" in the statute, courts have concluded that the statute contemplates "recreation" as occurring not only when a person is actively engaged in recreation but also when the person is on the "premises" and traveling to and from the recreational area. *City of Plano v. Homoky*, 294 S.W.3d 809, 817 (Tex. App.—Dallas 2009, no pet.); *Dubois v. Harris Cnty.*, 866 S.W.2d 787, 789–90 (Tex. App.—Houston [14th Dist.] 1993, no writ).

In *Homoky*, the plaintiff fell and injured herself in the clubhouse on a golf course after she played a round of golf. *Homoky*, 294 S.W.3d at 811–12. Initially, the court explained that, although golfing was not specifically listed in the statute as a recreational activity, it constituted "recreation" under the statute because it was an "activity associated with enjoying nature or the outdoors." *Id.* at 816 (quoting CIV. PRAC. & REM. § 75.001(3)(L)). Although the plaintiff was not

6

actually playing golf when she was injured, the court concluded that she was engaged in recreation at the time of her injury. *Id.* at 817. The *Homoky* court relied on the definition of "premises" in reaching its conclusion. *Id.* at 816. The clubhouse fell within the statute's definition of "premises" because it was a structure attached to the golf course. *Id.* The court stated that "what [plaintiff] was doing when she was injured was . . . related to the activity of playing golf" and, therefore, concluded that the plaintiff was engaged in recreation at the time of her injury. *Id.* at 817.

In *Dubois*, the plaintiff fell when she stepped into a hole in an area that separated park grounds from the parking area. *Dubois*, 866 S.W.2d at 789. Based on the definition of "premises" in the recreational use statute, the *Dubois* court explained that "Section 75.001 recognizes that a parking area or road would be a necessary and integral part of a recreational area." *Id.* The court concluded that the recreational use statute applied to the plaintiff's claims. *Id.* at 790.

We agree with the sound reasoning of the *Homoky* and *Dubois* courts. Thus, we conclude that a person is engaged in "recreation" under the recreational use statute when the person is on the governmental unit's premises for a recreational activity as defined in the statute and is traveling to and from the recreational area.[3] In this case, Karl drove her pickup to the gatekeeper booth. While in her pickup, she talked with the attendant and determined that there was room for her group to swim. At that time, Karl decided to buy a day pass for her group. She moved her pickup closer to the booth, parked there temporarily, approached the booth, and then paid the attendant for the day pass. Karl headed back to her pickup to move it

---

[3]The dissent cites to several cases to show application of the statute when an injury occurs after a person has engaged in a recreational activity and notes that none of the cases involve injuries that occurred before the activity. We fail to see how traveling to the activity is any less, if not more, a part of the activity than traveling from it.

to another location, park it, and then go swimming with her group. However, Karl was injured when she was on her way back to her pickup.

The evidence is undisputed that Karl's injury occurred on the premises owned by the Authority. The gatekeeper booth was a "structure" and, therefore, part of the "premises" under the recreational use statute. CIV. PRAC. & REM. § 75.001(2). Likewise, the parking area was part of the "premises." *Dubois*, 866 S.W.2d at 789–90. The recreational use statute defines "recreation" to include "swimming." CIV. PRAC. & REM. § 75.001(3)(C). Karl was in the process of traveling to the recreational area on the premises when she was injured. Specifically, she had purchased the day pass, and she was walking to her pickup so that she could park it and then go swimming. Karl's conduct on the premises related to the activity of swimming. Based on the undisputed evidence, we conclude that she was engaged in recreation at the time of her injury. *See Homoky*, 294 S.W.3d at 817.

Because Karl was engaged in recreation at the time of her injury, the recreational use statute applies to her claims against the Authority. *Id.* Under the statute, the Authority owed Karl the duty owed to a trespasser. CIV. PRAC. & REM. § 75.002(f). A premises owner owes a trespasser the limited duty "not to injure that person willfully, wantonly, or through gross negligence." *Miranda*, 133 S.W.3d at 225. In this case, Karl alleged a gross negligence claim but later voluntarily nonsuited the claim. In response to Karl's request, the trial court entered an order dismissing Karl's gross negligence claim. Karl has not alleged a viable claim under the recreational use statute because she has not alleged that the Authority acted willfully, wantonly, or through gross negligence. The requirements for a limited waiver of governmental immunity under the TTCA and the recreational use statute have not been met. Accordingly, the trial court lacked subject-matter jurisdiction over Karl's claims.

8

We conclude that the trial court did not err in granting the Authority's plea to the jurisdiction.  Karl's issues on appeal are overruled.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY

JUSTICE

April 23, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.